IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HURRICANE EXPRESS INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 24-cv-00393-SH |
| RED CHAMBER CO., | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Before the Court is Defendant's motion to dismiss for lack of personal jurisdiction.[1] The Court finds Defendant purposefully directed its activities at Oklahoma; the alleged injuries arose, in part, out of those activities; and the exercise of jurisdiction is otherwise reasonable. Defendant's motion will therefore be denied.

## Background

Plaintiff Hurricane Express Inc. ("Hurricane") brings this suit against Red Chamber Co. ("Red Chamber") for breach of contract and unjust enrichment. (ECF No. 2 at 5–9.[2]) According to the verified petition, "Hurricane provides temperature-controlled transportation services for food-grade shipments" and "delivers freight throughout the United States as a contract carrier of goods for hire." (*Id.* ¶ 4.) Red Chamber imports, exports, and sells seafood throughout the country. (*Id.* ¶ 5.) Hurricane alleges it shipped cargo for Red Chamber on at least 14 occasions in the first half of 2022, but Red Chamber failed to pay the $106,714.00 it owed for those shipments. (*Id.* at 6–7 ¶¶ 7, 11–12.)

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 15.)

[2] Page numbers refer to those in the ECF header.

Red Chamber moves to dismiss, arguing the Court lacks personal jurisdiction over it. (ECF No. 8.) *See* Fed. R. Civ. P. 12(b)(2).

## Analysis

### I. Standard of Review

Generally, a "court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). When considering a 12(b)(2) motion without an evidentiary hearing, the plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). "[I]n the preliminary stages of litigation, the plaintiff's burden is light." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). The plaintiff makes a prima facie case by demonstrating, through affidavit or other written materials, facts that if true would support jurisdiction over the defendant. *OMI Holdings*, 149 F.3d at 1091. The court must also accept as true any non-conclusory allegations in the complaint not controverted by a defendant's affidavits.[3] *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). If the parties present conflicting affidavits, all factual disputes will be resolved in the plaintiff's favor. *Id.*

### II. Factual Background

Applying this standard of review, the Court finds the following facts established by affidavit or other written materials:

---

[3] Here, the petition was verified (ECF No. 2 at 9), so the factual allegations within the petitioner's personal knowledge are treated as an affidavit. *See Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) ("A verified petition may itself be treated as an affidavit if the facts asserted are within the pleader's personal knowledge").

Hurricane is an Arkansas corporation with its principal place of business in Colcord, Oklahoma. (ECF No. 2 at 5 ¶ 1.) Hurricane provides temperature-controlled transportation services for food-grade shipments throughout the United States. (*Id.* ¶ 4.)

Red Chamber is a California corporation that has been operating from California for the past 44 years. (ECF No. 8 at 10 ¶ 2.) Red Chamber is an importer/exporter who sells seafood throughout the United States. (ECF No. 2 at 5 ¶ 5.) Red Chamber has no offices, facilities, employees, or other tangible real or personal property in Oklahoma and has no agents or representatives in the state. (ECF No. 8 at 10 ¶ 2.)

Hurricane has never solicited business or marketed its services to Red Chamber. (ECF No. 20-1 at 3 ¶ 9.) Instead, Red Chamber initiated the business relationship with Hurricane (*id.*), and the companies did business together for over a year, from at least July 2021 through August 2022 (*id.* at 2 ¶ 4). The current lawsuit relates to 14 of those shipments from January to June 2022. (ECF No. 2 at 6 ¶¶ 7–12.)

Regarding these shipments, Red Chamber contracted with Hurricane to deliver frozen seafood from California to customers in Illinois and Connecticut. (ECF No. 8 at 10 ¶ 3; *id.* at 11–12 ¶ 4.) The Red Chamber employee who books Hurricane's transportation services is based in California and has never worked in Oklahoma. (*Id.* at 11 ¶¶ 2–3.) The employee communicated with Hurricane by telephone or e-mail. (*Id.* ¶ 3; ECF No. 20-1 at 2 ¶ 4.) It was Red Chamber who contacted Hurricane to solicit each shipment. (ECF No. 20-1 at 2–3 ¶¶ 4–5.) Each time, after Red Chamber contacted it, Hurricane dispatched trucks and coordinated the shipments from its offices in Oklahoma. (*Id.*)

Red Chamber asserts that it did not pay Hurricane's invoices as a setoff for losses incurred as a result of an attempted delivery by Hurricane. (ECF No. 8 at 10 ¶ 3; *id.* at 12 ¶ 5.) When Hurricane invoiced Red Chamber for the 14 shipments, Red Chamber did not

3

tender the requested funds[4] but, instead, mailed its own invoices for over $100,000 to Hurricane at its address in Oklahoma.[5] (ECF No. 20-1 at 3 ¶¶ 6–7.)

### III. Personal Jurisdiction, Generally

Under the Due Process Clause of the Fourteenth Amendment, "a State's authority to bind a nonresident defendant to a judgment" is constrained. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). This constraint may be supplied by the law of the forum state or by constitutional due process limitations. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

To comport with due process, "defendants must have 'minimum contacts' with the forum state . . . ." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal quotations omitted). The minimum contacts standard may be met in one of two ways— (1) specific jurisdiction, where a defendant has purposefully directed his activities at residents of the forum and the plaintiff alleges injuries arising out of or relating to those activities; or (2) general jurisdiction, where a defendant's contacts with the forum state are such that it is subject to any suit, related or unrelated to those contacts. *See Benton*

---

[4] The parties offer no evidence as to where Red Chamber would normally tender funds for Hurricane's services. In its reply, Red Chamber asserts, without evidence, that it would pay Hurricane's factor in Minnesota. (ECF No. 21 at 3.)

[5] This, too, appears consistent with the parties' overall relationship. In total, Red Chamber sent 20 invoices to Hurricane at its Oklahoma offices. (ECF No. 20-1 at 3 ¶ 8; *see also id.* at 6–25 (invoices showing Hurricane's Oklahoma office as the "sold to" address and its Oklahoma or Arkansas office as the "ship to" address).)

*v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *OMI Holdings*, 149 F.3d at 1090–91). "[T]he contacts with the forum State must be such that the defendant 'should reasonably anticipate being haled into court there.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839–40 (10th Cir. 2020) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The connection "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284 (internal quotations omitted). In this analysis, the court examines "the quantity *and* quality of *Defendants'* contacts with [the forum state] to determine whether the district court's assertion of personal jurisdiction over Defendants comports with due process." *OMI Holdings*, 149 F.3d at 1092.

Even if a prima facie showing is made, however, the defendant may "demonstrate 'that the presence of some other considerations would render jurisdiction unreasonable.'" *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (quoting *OMI Holdings*, 149 F.3d at 1091). This is because jurisdiction must satisfy "traditional notions of fair play and substantial justice." *Id.* at 1287 (internal quotations omitted). The Tenth Circuit has instructed courts to "assess reasonableness by weighing five factors":

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1292 (quoting *Intercon*, 205 F.3d at 1249). In making this assessment, the court is to "take into account the strength of a defendant's minimum contacts." *Id.* This "evokes a sliding scale" where "the weaker the plaintiff's showing on minimum contacts, the less

5

a defendant need show in terms of unreasonableness to defeat jurisdiction."[6] *Id.* (internal quotations omitted) (cleaned up).

Here, Plaintiff does not dispute the Court's lack of general jurisdiction, arguing only that specific jurisdiction is proper. (ECF No. 20 at 5–12.) The Court, therefore, will address specific jurisdiction.

## IV.   Specific Jurisdiction

"Specific jurisdiction . . . is premised on something of a *quid pro quo:* in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008).

"Although agreements alone are likely to be insufficient to establish minimum contacts, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (internal quotations omitted). Therefore, courts must examine the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether minimum contacts exist in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). The agreement "relied upon to establish minimum contacts must have

---

[6] The Supreme Court has disapproved of a different "sliding scale" approach, where "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264 (2017). This does not impact the above-noted sliding scale test, which the Tenth Circuit has continued to apply. *See, e.g., Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1289 (10th Cir. 2020).

a 'substantial connection' with the forum state," *TH Agric.*, 488 F.3d at 1288, and the contacts must not be "random, fortuitous, or attenuated," *Burger King*, 471 U.S. at 480 (internal quotations omitted).  Nor may defendant's contacts be based on the "unilateral activity of another party or a third person . . ." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).  That said, physical presence in a state is not required.

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State.  Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.  So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476.

### A.     Red Chamber's Oklahoma Contacts

Based on the facts before the Court, Hurricane has established a prima facie showing of Red Chamber's minimum contacts with Oklahoma.  Those undisputed facts indicate that Red Chamber directly reached into Oklahoma to create a continuing relationship with Hurricane, a citizen of Oklahoma.  Red Chamber initiated the relationship with Hurricane, and this relationship lasted for over a year.  More importantly, the dispute in this case arises from the numerous shipping contracts Red Chamber initiated with Hurricane in Oklahoma, which were partially performed by Hurricane in Oklahoma (by coordinating the requested shipments and dispatching the needed trucks).  The dispute further arises from Red Chamber's attempts to setoff the amounts invoiced by Hurricane, which Red Chamber attempted to accomplish through sending its own invoices to Hurricane in Oklahoma.

7

Factors such as these support a finding that Red Chamber directed its conduct at the forum state. *See, e.g.*, *AST Sports Sci.*, 514 F.3d at 1059 ("[e]specially significant to our analysis is the fact that Mr. Holiday approached Mr. Delia about becoming AST's European distributor, and then formed an ongoing business relationship" through "[p]hone calls, letters, facsimiles, and emails"); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277–78 (10th Cir. 2005) (unpublished)[7] (factors supporting "purposeful availment" included that defendant solicited business from plaintiff; that, while manufacturing and shipping would not take place in the forum state, services necessary to performance of the contract would; that the contract "required a continuing relationship based on the provision of services"; and that defendant exchanged various communications with plaintiff in the forum state); *Art of Manliness, LLC v. UrbanDaddy, Inc.*, 478 F. Supp. 3d 1191, 1200 (N.D. Okla. 2020) (out-of-state defendant made "voluntary and informed decision to pursue a relationship with an Oklahoma business" where it "sought out a relationship with AOM and . . . was well aware that AOM was based in Oklahoma").

These cases stand in contrast to those where the *only* contact a defendant has with the forum is that the plaintiff happens to reside there.[8] *See, e.g.*, *Walden*, 571 U.S. 288–89 (defendant did not direct conduct toward Nevada when he seized money in Georgia from plaintiffs who were travelling to Nevada via Atlanta airport); *Stock v. SIACI*, No.

---

[7] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[8] Red Chamber attempts to use such cases to argue that the Court cannot rely "on facts showing that Plaintiff itself acted in the forum state, namely [that] Plaintiff conducted its usual business activity of facilitating and dispatching trucks to its customers in other states." (ECF No. 21 at 2.) In so doing, Red Chamber, however, ignores that this activity was solicited by its own, voluntary actions directed at Oklahoma.

C 02-2414 MEJ, 2002 WL 31528503, at *6 (N.D. Cal. Nov. 7, 2002) (no specific jurisdiction in California over contract dispute when shipment of home goods to California was negotiated in France with plaintiffs who were, at the time, residents of France). This is not the case here, as Red Chamber sought out a business relationship, involving numerous transactions, with an Oklahoma entity.

The Court further finds that Hurricane's alleged injuries arise out of Red Chamber's contacts with Oklahoma. "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb*, 582 U.S. at 264 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Here, Hurricane asserts damages arising from Red Chamber's failure to pay for services it solicited by contacting Hurricane in Oklahoma and for services performed in Oklahoma and elsewhere. Hurricane's claimed injuries arise out of Red Chamber's purposefully Oklahoma-directed activities.

Hurricane has, therefore, carried its burden of making a prima facie showing of personal jurisdiction over Red Chamber.

B.   **Reasonableness Factors**

Despite Hurricane's prima facie showing, the Court still must consider whether reasonableness factors weigh against exercising jurisdiction. *See Burger King*, 471 U.S. at 476–77. The Court addresses the factors in turn—(1) the burden on Red Chamber; (2) Oklahoma's interest in resolving the dispute; (3) Hurricane's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution; and (5) the shared interest of the several states in furthering fundamental substantive social policies.

### 1. Burden on Red Chamber

This first "factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." *OMI Holdings*, 149 F.3d at 1096 (case involving Canadian corporation). "Nevertheless, it is also true that 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'" *AST Sports Sci.*, 514 F.3d at 1061 (quoting *Burger King*, 471 U.S. at 474). Red Chamber argues that, as the underlying contracts concerned transportation of goods from California to Illinois and Connecticut, it is "likely that most of the relevant witnesses will be located in States other than Oklahoma." (ECF No. 8 at 7.) Red Chamber argues this means the burden on it to litigate in Oklahoma will be "considerable." (*Id.*)

Here, the Court finds some burden on Red Chamber—as it must defend a lawsuit roughly 1,400 miles from its place of operation. But the undersigned does not find this burden to be so prohibitive as to make jurisdiction improper. Red Chamber offers no evidence supporting its assertion that witnesses are located outside Oklahoma, other than the evidence that its traffic manager (who has booked Hurricane's trucks) works out of a Vernon, California office.[9] (*Id.* at 11 ¶ 2–3.) Meanwhile, Hurricane has offered evidence that the persons who coordinated the shipments and dispatched the trucks were located in its Colcord, Oklahoma office. (ECF No. 20-1 at 2 ¶ 4.) No one offers evidence regarding

---

[9] In reply, without affidavit or other written support, Red Chamber asserts that relevant witnesses for its affirmative defense "are the employees handling the physical loads during the journey from California to Illinois or Connecticut" (ECF No. 21 at 4), but it does not state where those specific employees are located. Red Chamber also mentions other employees, located in California, who it believes will be necessary witnesses. (*Id.*)

10

the location of other witnesses. As such, this factor weighs slightly in Red Chamber's favor, but does not convince the Court that jurisdiction is unreasonable.

### 2.    Oklahoma's Interest in Resolving the Dispute

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings*, 149 F.3d at 1096. This factor weighs in favor of exercising jurisdiction.

### 3.    Hurricane's Interest in Convenient and Effective Relief

The third factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum" and "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in [] another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.* at 1097. No party has presented an argument on this factor. As Red Chamber "has not shown that it would be more convenient or effective for [Hurricane] to litigate its claims outside of Oklahoma," *Art of Manliness*, 478 F. Supp. 3d at 1202, this factor is neutral.

### 4.    The Interstate Judicial System's Interest

"The fourth factor . . . examines whether the forum state is the most efficient place to litigate the dispute." *OMI Holdings*, 149 F.3d at 1097. "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* (citations omitted). Here, the only evidence presented is that there are witnesses in California and Oklahoma. There were shipments to Illinois and Connecticut and, depending on the nature of the dispute, perhaps there are some witnesses there, too. Red Chamber has made no argument or showing as to which state's

11

law will govern the underlying dispute. To the extent Red Chamber's setoff invoices form the basis of its alleged failure to pay, then some of the wrong underlying Hurricane's lawsuit appears to have occurred in Oklahoma—although there may have been nonpayment in Minnesota and actions taken by Red Chamber in California. There is no indication that any piecemeal litigation will occur. At best, this factor is also neutral.

### 5. Social Policies

Finally, the Court considers "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies." *Id.* Red Chamber has offered no evidence or argument as to this factor and, again, has made no showing indicating that another state's laws will apply. Instead, this appears to be a garden-variety contract dispute. *See Art of Manliness*, 478 F. Supp. 3d at 1202. The Court sees no substantive social policies to advance. As such, this factor is also neutral.

In light of these factors, Red Chamber has not met its burden of showing considerations that would render jurisdiction unreasonable.

### Conclusion

IT IS THEREFORE ORDERED that Defendant's *Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) for Lack of Personal Jurisdiction* (ECF No. 8) is DENIED.

ORDERED this 12th day of February, 2025.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT